IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DEBORAH K. ELDER, ) | Civil Action No. 3:09-02365-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

By Order of Reference (ECF No. 19) from the Honorable R. Bryan Harwell, United States District Judge, pursuant to 28 U.S.C. § 636, Local Civil Rule 73.02(B) DSC, and the consent of the parties, the case is before the undersigned Magistrate Judge for a final order. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff protectively applied for DIB on September 13, 2007, with an alleged onset of disability of March 10, 2006. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (the "ALJ").

Plaintiff appeared and testified at a hearing held on September 18, 2008, at which a vocational expert also appeared and testified. On November 6, 2008, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because she could perform past relevant work and, therefore, was not disabled within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520(f).



Plaintiff, 54 years old at the time of the ALJ's decision, has past relevant work as an assembly line worker and delivery person. (See, e.g., Tr. 26, 123, 133). She alleged disability due to depression, anxiety, fibromyalgia, leg and back pain, thyroid problems, and hypertension. (Tr. 132).

The ALJ found (Tr. 12, 18, 20, 25, 26):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 10, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairments: fibromyalgia, lumbosacral degenerative disc disease, obesity, anxiety disorder and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the [residual functional capacity] to stand/walk for six of eight hours in an eight-hour workday; to sit for six of eight hours in a workday; and to lift/carry a maximum of 25 pounds frequently and 50 pounds occasionally. She can frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl. She is limited to simple one and two step tasks.

6. The claimant is capable of performing past relevant work as an assembly line worker and deliverer. This work does not require the performance of work-related activities precluded by the claimant's [residual functional capacity] (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2006 through the date of this decision (20 CFR 404.1520(f)).

On June 15, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 1), thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff then filed this action on August 14, 2009.



**SCOPE OF REVIEW**

The Social Security Act (the "Act") provides that DIB shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation set forth in the Social Security regulations. See 20 C.F.R. § 404.1520.[1] The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

The scope of judicial review by the federal courts in disability cases is narrowly tailored. Thus, the only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270

---

[1] All of this Court's regulatory references are to the 2008 version of the Code of Federal Regulations (C.F.R.).



F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

In her brief before the court, Plaintiff alleges that the ALJ failed to: (1) properly assess the opinion of her treating physician; (2) make specific findings about the mental demands of her past relevant work; and (3) consider the impact of her obesity at step four of the sequential evaluation process. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error.

### A. Treating Physician Opinion

Plaintiff first argues that the ALJ failed to follow the regulations when assessing the opinion of her treating physician, Dr. Pranay Patel. Although it is not binding on the Commissioner, a



treating physician's opinion is entitled to great weight but may be disregarded if persuasive contradictory evidence exists to rebut it. Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 20 C.F.R. § 404.1527(d)(2). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)(quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (footnote omitted)). An ALJ, therefore, must explain his reasons for disregarding the opinion of a treating physician. E.g., Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (noting the ALJ must provide specific and legitimate reasons for disregarding treating physician's opinion); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting."); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (The ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); see also DeLoatche v. Heckler, 715 F.2d 148, 150-51 (4th Cir. 1983) (discussing the ALJ's general duty of explanation).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that, if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

After Plaintiff had seen Dr. Patel for some ten months, he "[f]illed out some paperwork for her lawyers." (Tr. 211). On this "Fibromyalgia Residual Functional Capacity Questionnaire," the doctor opined that Plaintiff's anxiety, depression, hypertension, hypothyroidism, fibromyalgia and "generalized pain" so limited her that she would be unable to work. (See Tr. 207-10.) The ALJ, however, assigned "little weight" to Dr. Patel's opinion `because it was generally "not well-supported by medically acceptable clinical and laboratory diagnostic techniques"[2] and "inconsistent with the other substantial evidence in the case record." (Tr. 21).

The ALJ explained that many of the symptoms upon which Dr. Patel based his opinion were mentioned little or not at all. (Id.). Further, Dr. Patel described Plaintiff's pain as being in multiple locations that are not reflected in his notes, which mainly reference Plaintiff's neck, back and shoulders. The doctor's "assessments" would often repeat Plaintiff's complaints, e.g., "Falls" (Tr. 168), "Family history of heart disease" (Tr. 172), motor vehicle accident (Tr. 219), and "Leg cramps" (Tr. 245).

The ALJ noted that Dr. Patel first diagnosed Plaintiff with fibromyalgia in September 2007[3] (see Tr. 221) and, despite the purported severity of her symptoms, he had not referred her to a rheumatologist[4] (Tr. 24). Plaintiff next saw Dr. Patel on November 8, November 27 and

---

[2]The ALJ's evaluation does not actually rely upon this finding, but the Court nevertheless finds his explanation adequate.

[3]Plaintiff's brief relies on statements from the psychiatric examiner's report, but these comments are clearly based on Plaintiff's complaints to the doctor, rather than his first-hand observations. (See, e.g., Tr. 184 ("*According to her report*, I hurt all the time[.]; " "*She mentions that*, she is troubled by her constant pain[.]" (emphases added)); Tr. 187 ("*This woman reports* experiencing constant pain." (emphasis added)).

[4]Fibromyalgia has traditionally been used for "'an ill-defined, poorly understood set of symptoms,'" such as muscle and joint pain and stiffness, fatigue, and sleep disturbance. Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004) (citations



December 17, but on none of these dates did Dr. Patel mention fibromyalgia. (See Tr. 215-19). On the other hand, he would routinely note Plaintiff's hypertension, even though she was not experiencing any symptoms related thereto. Dr. Patel did not note a diagnose of fibromyalgia again until January 2008, and did not diagnose Plaintiff with fibromyalgia again even though he examined Plaintiff in May, July, and August of 2008. (See Tr. 211-13; 245-50). In fact, Plaintiff's medical records fail to reveal any chronic complaints after January 2008.

Plaintiff asserts that the ALJ's "purported reason" for dismissing Dr. Patel's opinion stems from its lack of basis in the doctor's treatment notes, and that "[t]his alone cannot be considered 'persuasive contradictory evidence.'" (Pl.'s Br. 7). But Hines provides that the ALJ must first weigh the physician's opinion to determine, inter alia, its supportability and its consistency with the record. 453 F.3d at 563 (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)). As the ALJ's decision demonstrates, Dr. Patel's opinion fails on both counts.

---

omitted). Hypothyroidism and polymyalgia rheumatica can mimic fibromyalgia, and it can be confused with rheumatic disorders such as rheumatoid arthritis or lupus. Objective tests, "rather than proving the existence of fibromyalgia, are used to rule out alternative explanations for the pain, leaving fibromyalgia as the remaining label for the collection of symptoms." Id. at 877. The only symptom that discriminates between it and other syndromes and diseases is multiple tender spots. According to the American College of Rheumatology, the diagnosis is appropriate for an otherwise unexplained condition in which a patient complains of pain, lasting at least 3 months, "on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest)," Stedman's Medical Dictionary 671 (27th ed. 2000), in at least 11 of 18 specified points when the examining physician palpates them with his thumb, see Frederick Wolfe et al., The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia, 33 Arthritis & Rheumatism 160, 171 (1990). Dr. Patel's treatment notes fail to reflect that he conducted such an exam, or how many trigger points he found and where. There is no showing that Dr. Patel entertained any other diagnoses, or that Plaintiff suffered from trigger point pain for at least three months prior to his diagnosis.

The ALJ's decision is also consistent with Craig. Citing § 404.1527(d)(2),[5] the Fourth Circuit Court of Appeals noted the treating physician's lack of objective findings, the minimal laboratory evidence, and that the doctor's "own medical notes did not confirm his determination of 'disability.'" 76 F.3d at 590. The court therefore found "sufficient evidence justifies the ALJ's rejection of [the doctor]'s conclusory opinion and *his finding that the record contains persuasive contradictory evidence (including [the doctor]'s own notes).*" Id. (emphasis added). Because the ALJ here correctly noted Dr. Patel's lack of or inconsistent findings and that the doctor's notes did not support his opinion, the undersigned also finds sufficient evidence to justify the ALJ's decision.

Plaintiff contends that the ALJ rejected Dr. Patel's opinion based on "serious ambiguities" (Pl.'s Br. 8), but she has mischaracterized the ALJ's explanation. An "ambiguity" is an uncertainty or inexactness of meaning in language, or a lack of decisiveness or commitment resulting from a failure to make a choice between alternatives. An inconsistency, on the other hand, is when something is not uniform, it is not in keeping with, or it does not stay the same throughout. Dr. Patel's finding was not inexact, but rather, not in keeping with his treatment notes.

---

[5] If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2).

## B. Duty to Recontact

Plaintiff suggests that the ALJ should have recontacted Dr. Patel pursuant to 20 C.F.R. § 404.1512(e)(1)[6] "to seek additional evidence or clarification." (Pl.'s Br. 8). However, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (citing 20 C.F.R. § 404.1512(e); alterations in original). The ALJ found Dr. Patel's opinion neither incomplete nor unclear, but rather, merely inconsistent with the medical evidence. In that manner, this case is analogous to that of Hacker v. Barnhart, 459 F.3d 934 (8th Cir. 2006):

> Hacker argues in the alternative that, even if the treating physicians' opinions were inconsistent with their treatment notes and their previous medical advice to Hacker, the ALJ was required to contact the physicians to clarify their opinions. While the regulations provide that the ALJ should recontact a treating physician in

---

[6] When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e).



> some circumstances, 20 C.F.R. § 404.1512(e), that requirement is not universal. The regulations provide that the ALJ should recontact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the applicant is actually disabled. 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician ... is inadequate for us to determine if you are disabled ... [w]e will ... recontact your treating physician ... to determine whether the additional information we need is readily available."). The regulations do not require an ALJ to recontact a treating physician whose opinion was inherently contradictory or unreliable. This is especially true when the ALJ is able to determine from the record whether the applicant is disabled. See Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (holding that there is no need to recontact a treating physician where the ALJ can determine from the record whether the applicant is disabled). In this case, the issue was not whether the treating physicians' opinions were somehow incomplete. The ALJ found them refuted by the record and the treating physicians' own earlier opinions and advice. The ALJ was under no obligation to recontact the treating physicians under such circumstances.

Id. at 938 (alterations in original). Accordingly, the undersigned finds no merit in Plaintiff's argument.

### C. Past Relevant Work

The ALJ decided Plaintiff's case at step four of the sequential evaluation process, finding that she retained the residual functional capacity ("RFC") to perform her past relevant work ("PRW") as an "assembly line worker and deliverer." (Tr. 25). Relying on Social Security Ruling ("SSR") 82-62, reprinted in West's Social Security Reporting Service: Rulings 1975-1982, at 809 (West Publ'g Co. 1983) [hereinafter SSRS], Plaintiff contends that the ALJ failed to conduct the proper analysis in determining whether she could return to her PRW.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if, given her RFC, she remains capable of performing her PRW. 20 C.F.R. § 404.1520(f). The claimant bears the burden of establishing that she is incapable of performing her PRW. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). SSR 82-62, which



states the policy and explains the procedure for determining a claimant's ability to perform PRW, requires that the ALJ's decision contain the following findings of fact:

1. as to the individual's RFC;

2. as to the physical and mental demands of the PRW;

3. that the claimant's RFC would permit a return to his PRW.

SSR 82-62, in SSRS, supra, at 813.

Specifically as to "a claim involving a mental/emotional impairment," SSR 82-62 urges,

> [C]are must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

Id. at 812. Although the claimant is considered the "primary source for vocational documentation," id. at 811, "supplementary or corroborative information" may be obtained from the DOT,[7] id. at 811-12, or a vocational expert ("VE"), SSR 82-61, in SSRS, supra, at 836, 838. See also 20 C.F.R. § 404.1560(b)(2) ("We may use the services of [VEs] ... or other resources, such as the [DOT], ... to obtain evidence we need to help us determine whether you can do your [PRW], given your [RFC].").

In this case, the ALJ had available to him Plaintiff's SSA-3369, "Work History Report," in which she described her PRW. (Tr. 123-30). See SSR 82-61, in SSRS, supra, at 838 (discussing utility of the claimant's vocational report). Plaintiff also described her PRW as an assembly line worker on her initial Disability Report, SSA-3368. (Tr. 133-34). She continued this work even while

---

[7]Emp't & Training Admin., U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev. 1991).



suffering from depression and anxiety.[8] (See, e.g., Tr. 276, 277). Based on the two forms, state agency examiners determined that Plaintiff could perform her PRW as an assembly line worker both as she had performed it (Tr. 138), and as generally performed in the national economy (Tr. 151), even with her mental limitations.

The ALJ further consulted with a VE. At the hearing, he had the VE identify Plaintiff's PRW. (See Tr. 47). The VE responded that Plaintiff's PRW was as an assembly line worker, and that she also performed "delivery." (Id.). The ALJ asked if a hypothetical individual, who "could do simple one, two-step tasks," could perform these jobs, and the VE answered affirmatively. (Tr. 48). Accordingly, in his decision, the ALJ stated that:

(1) Plaintiff had the mental RFC to perform "simple one and two step tasks" (Tr. 20), specifically, that she could "meet the basic mental demands of unskilled work" (Tr. 22);

(2) Citing the VE's testimony, Plaintiff's PRW as an assembly line worker was "unskilled with an SVP[9] of 2" (Tr. 25 (footnote added)); and

(3) Plaintiff's RFC would allow her to perform her PRW as "an assembly line worker and delivery person" (Tr. 26).

Plaintiff avers that, because the VE did not refer to specific DOT numbers, the exact physical and mental demands for her PRW are unknown.[10] The state agency examiner, however, not only referenced the appropriate number (706.687-010, "Assembler, Production"), but a description of the

---

[8]Plaintiff does not contest the ALJ's decision with regard to the physical demands of her PRW.

[9]"The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2[.]" SSR 00-4p, 65 Fed. Reg. 75,759-01, 75,760 (Dec. 4, 2000).

[10]Again, Plaintiff does not challenge either the ALJ's or the VE's physical findings.

12



occupation is also included in the transcript. (See Tr. 140). Consistent with the VE's testimony, the job is characterized at SVP 2. No more detail is needed, as the only mental limitation found by the ALJ was that Plaintiff was limited to unskilled work. See SSR 82-62, in SSRS, supra, at 812 (requiring only "enough information on past work to permit a decision as to the individual's ability to return to such past work").

As to the position identified as "store deliverer," the decision fails to provide "enough detail and clarity to permit meaningful appellate review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). Plaintiff's Form SSA-3369 describes her performance of the job entitled "Direct Store Delivery" as follows: "Counted & scaned [sic] product vendors brought to store. Then printed out their bills." (Tr. 124). None of Plaintiff's other submissions discussed this position, and the examiners did not address it in their vocational analyses. Although the VE testified that the DOT classified the job with an SVP of 2 (Tr. 47), neither he nor the ALJ provided a DOT number, and the position of "store delivery" is not identified in the DOT. However, as the ALJ's decision that Plaintiff can perform her PRW as an assembly line worker is supported by substantial evidence, any error by the ALJ in this regard is harmless.[11]

Plaintiff proposes that the assembly line job might "require repetitive movements that must be performed in a consistent and speedy manner suitable for mass production," leading to "tension and anxiety due to the non-stop pace." (Pl.'s Br. 9). The problem with this scenario is that there is no evidence in the record that Plaintiff would experience "tension and anxiety" even if the position

---

[11]Based on this finding, there is no need to address either Plaintiff's suggestion that the job "would certainly require frequent to constant contact with the general public" (Pl.'s Br. 9), or the ALJ's rejection of the non-examining consultants' opinion that Plaintiff was "not well-suited for meeting the demands of working with the general public" (Tr. 241; see also Tr. 204).

13



required a speedy, non-stop pace. Both non-examining consultants found that Plaintiff experienced a moderate degree of limitation in maintaining concentration, persistence *or* pace (Tr. 198, 235) – a severity measure. They additionally opined, however, that she was "Not Significantly Limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods" (Tr. 203, 240) – a measure of her mental RFC. Thus, the ALJ did not err in failing to question the VE about this characteristic. Cf. Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (stating that "a hypothetical question is unimpeachable if it *'adequately reflect[s]'* a residual functional capacity for which the ALJ had sufficient evidence" (quoting Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005); alteration in original)).

### D. Obesity

The ALJ found Plaintiff's obesity to be a "severe" impairment.[12] Plaintiff accurately cites the provisions of SSR 02-1p, 67 Fed. Reg. 57,859-02 (Sept. 12, 2002), that obesity can cause limitation in the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling; the postural functions of climbing, balance, stooping, and crouching; the ability to manipulate; and the ability to tolerate environmental extremes. Id. at 57,862. Further, where obesity is a factor, "fatigue may affect the individual's physical and mental ability to sustain work activity," and "RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Id. at 57,682-63 (citing SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996)).

---

[12]"As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 67 Fed. Reg. 57,859-02, 57,861-62 (Sept. 12, 2002).



Plaintiff is incorrect, however, that the ALJ failed to address her obesity at step four of the sequential evaluation process. He expressly recognized that "SSR 02-01p[sic] requires that I consider the effects of obesity not only under the listings [step three] but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's RFC." (Tr. 19). Thus, after his step three analysis, the ALJ stated that he had considered the opinions of the state agency medical consultants. (Tr. 20). Neither believed that Plaintiff suffered from *any* severe impairment (see Tr. 181, 243), but the ALJ rejected these findings "[b]ased on additional medical evidence and testimony" (Tr. 21). The ALJ also considered Dr. Patel's opinion, but Plaintiff's treating physician failed to list obesity among her "diagnosed impairments." (Tr. 253). Cf. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (finding that the ALJ's "adoption" of the doctors' conclusions, when they were aware of the plaintiff's "obvious obesity," constituted "satisfactory if indirect consideration of that condition"); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (finding harmless error where the ALJ did not address the claimant's obesity but did adopt "the limitations suggested by the specialists and reviewing doctors" who were aware of the condition). Moreover, the ALJ assessed Plaintiff's own statements (Tr. 22-23), but she failed to mention obesity in her disability filings or in her testimony.

Particularly with regard to a claimant's ability to perform PRW, the ALJ is to consider, inter alia, "medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work." SSR 82-62, in SSRS, supra, at 811. Yet there is no indication that Plaintiff complained to Dr. Patel about her obesity or any limitations therefrom. Additionally, Plaintiff's medical records do not link any symptom or limitation to Plaintiff's obesity. As the ALJ noted, Plaintiff "has had only conservative treatment." (Tr. 24). Indeed, Dr. Patel only advised her

15



to exercise and diet, and did not prescribe medication or recommend surgery. (See Tr. 175, 214, 246).

Finally, there is no reason for the ALJ to have considered Plaintiff's obesity in connection with her ability to perform her PRW. According to Plaintiff's Disability Report (Tr. 132, 133) and Work History Report (Tr. 123), she stopped working in March 2006. Yet Plaintiff was already obese in January 2005 (see Tr. 285), the date of her earliest medical record; she weighed only three more pounds in March 2006[13] (see Tr. 272, 273). Thus, there is no showing that Plaintiff's obesity ever affected her ability to perform her PRW.

Importantly, SSR 02-1p has done nothing to alter the Commissioner's regulations. The duty to evaluate a claimant's symptoms, imposed by 20 C.F.R. § 404.1529(c), does not extend to guessing the impact of a condition. Rather, §§ 404.1512(c) and 404.1545(a)(3) explicitly impose upon the claimant the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on the claimant's ability to work on a sustained basis. A condition that does not result in any functional impairment is not relevant to the RFC analysis.

Although there are notations of Plaintiff's obesity in the record, there is no indication that this condition had any effect on her functioning. Notably, Plaintiff does not explain what effect her obesity has on her ability to work. As neither her medical records, nor her own statements, provide such evidence as to her obesity, any failure of the ALJ to explicitly address Plaintiff's obesity is only

---

[13]In defining obesity, SSR 02-1p cites to the Clinical Guidelines of the National Institutes of Health, which "classify overweight and obesity in adults according to Body Mass Index (BMI)." 67 Fed. Reg. at 57,860 (citing NIH Publ. No. 98-4083, Sept. 1998). These Clinical Guidelines recognize three levels of obesity. The lowest, "Level I," includes BMIs of 30.0 to 34.9. At 62.25 inches and weighing between 170 and 186 pounds, Plaintiff's BMI never exceeded Level I.



harmless error. See, e.g., Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming the ALJ's decision where "there is no question but that he would have reached the same result notwithstanding his initial error"); Owen v. Astrue, 551 F.3d 792, 801 (8th Cir. 2008) (refusing to set aside an administrative finding based on "'an arguable deficiency in opinion-writing technique'" when it had no affect on the outcome) (citation omitted)).

Plaintiff here also seems to challenge the ALJ's physical RFC finding. In coming to his decision, the ALJ relied in part on Plaintiff's "range of daily activities consistent with a capacity for medium exertion with the additional limitations set forth above." (Tr. 23). See Johnson, 434 F.3d at 658 (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Plaintiff argues that this rationale is not enough, but it is only a portion of the ALJ's reasoning. The ALJ noted that Plaintiff had attempted to gain custody of her young grandchild, the care of whom would "be quite physically and mentally demanding." (Tr. 23). The ALJ concluded, "the fact that the claimant thought she was capable of [caring for a young child] indicates she is not as limited as she has alleged." (Id.).

The ALJ added that Plaintiff's records mostly reflected symptoms in her back, shoulders and neck, and these would not significantly limit her walking and standing. He referred to Plaintiff's treatment by the conservative methods of medication and physical therapy. (Tr. 24). The ALJ noted that Dr. Patel had not recommended surgery or a referral to a rheumatologist. He further relied on Plaintiff's receipt of unemployment benefits through January 2007 to show "that she held herself out as available, willing and able to work." (Tr. 25). The ALJ determined that, "[t]aken together, this evidence shows that claimant's pain and subjective symptoms are of mild to moderate severity, are



responsive to conservative treatment and are not severe enough to restrict her from performing medium work with the additional limitations set forth above." (Id.). The Court agrees.

Plaintiff maintains that her ability to occasionally engage in her activities of daily living should not cast doubt upon her credibility, specifically her testimony that she can sit for only thirty minutes, stand for no more than ten to fifteen minutes, and lift only ten pounds.[14] (Tr. 39-40). But in addition to the evidence already discussed, the ALJ cited to Plaintiff's testimony that her medications cause memory loss, although Dr. Patel wrote that she suffered no side effects. (E.g., Tr. 171, 212). See SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,486 (July 2, 1996) (a strong indication of credibility is the consistency of the claimant's statements with other information in the case record). Also, Plaintiff testified that she stopped working in May of 2004 or 2005 (Tr. 32), yet her records clearly indicate that she did not stop working before March 2006. (See, e.g., Tr. 98 (Disability Application); 105 (Earnings Record); 123 (Work History Report); 132 (Disability Report); 281 (9/1/05, complains "Can hardly stand at work.")). Additionally, the ALJ relied upon Plaintiff's application for unemployment benefits as "'some evidence'" to undermine her credibility. (Tr. 25). See Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005) (finding "claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work" is a factor in assessing his subjective complaints of disability); Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998) ("the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability"); Hayes v. Astrue, 569 F. Supp. 2d 910, 926 (E.D. Mo. 2008) ("Applying for unemployment benefits may be

---

[14]Plaintiff did not attempt to link these limitations to her obesity, and there is no evidence of record to support such linkage.

18



some evidence ... to negate a claim of disability."). The ALJ thus sufficiently supported his credibility finding.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

ORDERED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

October 7, 2010
Columbia, South Carolina